UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSES HOBBS, JR.,

    Plaintiff,

v.                                           Case No. 1:14-cv-121

                                                Hon. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                 /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on January 4, 1969 (AR 211).[1] He alleged a disability onset date of February 14, 2009 (AR 211). Plaintiff completed the 12th grade and had previous employment as an assembler in a factory, a fast food worker, and a restaurant manager (AR 54, 216). Plaintiff identified his disabling conditions as a personality disorder, depression, and migraine headaches (AR 215). On October 19, 2012, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 19-28). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 14, 2009, and that he met the insured status requirements of the Social Security Act through December 31, 2013 (AR 21). At step two, the ALJ found that plaintiff suffered from severe impairments of an affective disorder, personality disorder and alcohol dependence (AR 21). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels, but is non-exertionally limited to simple, routine, and repetitive tasks; with only occasional supervision, interaction with the public, interaction with coworkers, and changes in the work setting" (AR 25). The ALJ also found that plaintiff was capable of performing his past relevant work as an assembler, work which did not required the performance of work-related activities precluded by his RFC (AR 27).[2] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 14, 2009 (the alleged onset date) through October 19, 2012 (the date of the decision) (AR 28).

---

[2] Although unnecessary, the ALJ also made an alternative finding at step five of the sequential evaluation that plaintiff could perform other unskilled work in the regional economy (the Lower Peninsula of the State of Michigan) such as dishwasher (8,540 jobs), inspector (730 jobs), and packer (4,775 jobs) (AR 28).

4

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A. Did the ALJ err by stating that the opinion of Dr. Ostien was consistent with his RFC, when the vocational expert testified that one of the limitations in the doctor's opinion was work preclusive?**[3]

Plaintiff framed this alleged error as follows:

> The Administrative Law Judge Paul Jones states specifically that he interprets the opinion of Dr. Ostien as <u>consistent with his own</u> with regard to the functional capabilities of the claimant. (Ar 26). This finding cannot be sustained and it calls into question any remaining findings of the Administrative Law Judge. To the extent he relies upon a consistency with his opinion in that of Dr. Ostein [sic], the decision must fail.

Plaintiff's Brief at p. ID# 416 (docket no. 14) (Emphasis in original). In this regard, plaintiff states that "[t]he limitations of Dr. Ostein [sic] were posed to the vocational expert specifically, and the vocational expert concluded that the findings of the consultative examiner were not consistent with substantial gainful activity[] (AR 58)." *Id.*

Plaintiff's claim is based upon the ALJ's evaluation of a report prepared by psychologist J. Keith Ostien, Ph. D.:

> A Mental Status Exam was conducted October 26, 2011, by J. Keith Ostein [sic], PhD. Claimant said he abused alcohol very heavily throughout his lifetime and cut back about a year ago. He said he still drank "a little." Dr. Ostein [sic] said claimant was unspecific about how much he actually was drinking at that time. He has a primary care physician who sent him to St. Lawrence Mental Health. He said he went once but did not go back because he did not like people "telling me stuff." His daily activities consistent of getting up, watching television, and playing video games all day long. Dr. Ostein [sic] said that throughout the evaluation, claimant

---

[3] The Court has re-stated plaintiff's statement of error, which appeared in his brief as follows, "Did the Administrative Law Judge make a direct factual [sic] (that the opinion of Dr. Ostien is consistent with his own) with regard to the functional capabilities of the claimant finding [sic] in direct conflict with the evidence of record." Plaintiff's Brief at p. ID# 412 (docket no. 14).

5

> was very agitated and angry.  He said no one was helping him with his severe headaches and he could not do much each day because of his unremitting alleged headaches.  Claimant appeared to be extremely photosensitive and reactive to the light in the room.  He exhibited evidence of continuing severe depression, which seemed to be significantly exacerbated by his severe headaches.  Claimant also said he had a history of difficulty getting along with others.  Diagnoses included alcohol dependence, chronic and severe; major depressive disorder, recurrent and severe; and personality disorder.  Dr. Ostein [sic] added that claimant appeared to have moderately impaired capabilities to understand, retain, and follow simple instructions and perform and complete simple tasks.  He appeared to have severely impaired capabilities to interact appropriately and effectively with coworkers and supervisors and to adapt to changes in the work setting.  It was also suspected that claimant's limitations would result in severely impaired capacity to do work-related activities.  Prognosis was poor as claimant was in need of ongoing psychological treatment and substance abuse treatment (Exhibit 4F).

(AR 23).

In determining plaintiff's RFC, the ALJ adopted a portion of Dr. Ostien's opinion:

I interpret Dr. Ostein's [sic] comments in the last paragraph of page 3 in exhibit 4F, as consistent with my finding that claimant has severe mental impairments leading to the functional limitations listed in the RFC adopted.

(AR 26).  This paragraph provides:

> The results of this evaluation, to include the results of the psychological instruments, records I was able to review, and Moses' presentation throughout the evaluation, indicate that he has severe, unremitting headaches and feels extremely debilitated by them.  His physician will have to offer an opinion regarding his level of impairment to do work-related activities as a result of medical problems.  Moses also exhibited evidence of a severe Depressive Disorder at this time.  He also was diagnosed with a Personality Disorder when he was in the U.S. Navy, and continues to exhibit symptoms consistent with that diagnosis.  Lastly, Moses exhibits evidence of severe, chronic alcoholism.  Currently, he appears to have Moderately Impaired capabilities to understand, retain, and follow simple instructions and to perform and complete simple tasks.  He appears to have Severely Impaired capabilities to interact appropriately and effectively with co-workers and supervisors, and to adapt to changes in the work setting.  It is suspected that Moses' limitations would result in Severely Impaired capacity to do work-related activities.

(AR 293).  The ALJ interpreted this paragraph of Dr. Ostien's opinion as consistent with his finding that plaintiff had "severe mental impairments" leading to the functional limitations listed in the RFC,

which limited plaintiff "to simple, routine, and repetitive tasks; with only occasional supervision, interaction with the public, interaction with coworkers, and changes in the work setting" (AR 25-26).

At the administrative hearing, plaintiff's attorney posed a rather confusing series of hypothetical questions to the vocational expert (VE), with respect to Dr. Ostien's conclusion that plaintiff had "severely impaired capability" to interact with co-workers and supervisors which would preclude competitive work (AR 58-59). Ultimately, the VE testified "Yes. That would be work preclusive." (AR 59). Plaintiff contends that the ALJ's decision denying benefits is unsupported by the record, because the ALJ adopted a portion of Dr. Ostien's opinion (i.e., the last paragraph of page 3 in Exhibit 4F (AR 293)) which, according to the VE, contained a work preclusive impairment.

The ALJ's opinion is internally inconsistent with respect to the particular impairments identified in Dr. Ostien's opinion. If the ALJ adopted all of Dr. Ostien's opinions expressed in this paragraph, then the ALJ should have either found plaintiff disabled or explained why plaintiff was not disabled given the VE's testimony with respect to the work preclusive impairment. The ALJ did neither. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Ostien's opinion and the VE's testimony that plaintiff's "severely impaired capability" to interact with co-workers and supervisors was work preclusive.

> **B.    Did the ALJ err by failing to include plaintiff's headaches as a severe impairment or a medically determinable impairment, when the headaches were documented prior to the alleged disability onset date?** [4]

During an examination on November 5, 2008, approximately three months before plaintiff's alleged disability onset date of February 14, 2009, consulting physician Elaine Koutainis, M.D. noted that plaintiff gave a history of "classic migraines with an aura of scintillations" which he claimed to have three to four times per month (AR 249). Dr. Koutainis concluded that, "There is a headache disorder consistent with migraine. The posterior neck pain is due to muscle tension from the migraine." (AR 251). The doctor also noted that plaintiff "has posterior neck pain and throbbing palpated at the temporal regions consistent with a migraine today; the lights were dimmed for comfort; traction on his neck in an upward direction helped his neck pain" (AR 250). Nevertheless, the doctor did not consider the headache disorder as a work preclusive limitation, concluding that "[i]t is unclear why the client does not succeed at work" (AR 251).

At step two of the sequential evaluation, the ALJ found that plaintiff's alleged condition of migraine headaches was not a medically determinable impairment:

> In a Function Report completed October 12, 2011, claimant said he cannot work because he gets headaches about two to three times a week. He has no problems in caring for his own personal needs. He prepares his own meals, can launder clothes, iron, and mow the grass. He can shop for food and clothing about once a month and he can pay his own bills. He enjoys movies, video games, basketball, and church on Sundays. When he gets headaches, he gets numbness in his legs and mood swings. He has difficulty following directions and he does not handle changes in routine well (Exhibit 4E).

---

[4] The Court has re-stated plaintiff's statement of error, which appeared in his brief as follows, "Is the failure to consider the relevance [sic] medical records and documentation of claimant's headaches, dated outside the period of benefits [sic]." Plaintiff's Brief at p. ID# 412.

> In light of the objective medical evidence, I find claimant's mental conditions produce limitations that meet the definition of severe, as will be clear from the discussion of claimant's residual functional capacity later in this decision. Furthermore, claimant's allegations of migraine headaches have not been diagnosed during the relevant period and are not, therefore, a medically determinable impairment. In 2008, Dr. Kountanis, during a consultative examination, said claimant's headaches may be consistent with migraines, but there has been no actual diagnosis of migraines and no relevant migraine medication has been prescribed.

(AR 24). Plaintiff's Brief at p. ID# 417.

Plaintiff contends that the ALJ "totally ignores any finding of limitations with regard to [his] migraine headaches." Plaintiff's Brief at p. ID# 147. While it is not entirely clear from plaintiff's brief, it appears that he claims that the ALJ failed to include migraine headaches as a severe impairment at step two and also failed to include migraine headaches as a non-severe medically determinable impairment which could be considered in determining the RFC.

At step two of the sequential evaluation, plaintiff must show that he suffers from a "severe impairment" in order to warrant a finding of disability. *Heston*, 245 F.3d at 534. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servivces*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff had

severe impairments of an affective disorder, personality disorder and alcohol dependence (AR 21). The ALJ's failure to include the additional severe impairment of migraine headaches at step two is legally irrelevant. *Anthony*, 266 Fed. Appx. at 457.

Furthermore, ALJ failed to include migraine headaches as a non-severe medically determinable impairment which could be considered in determining the RFC. *See Maziarz*, 837 F.2d at 244; 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity."). While Dr. Koutainis observed in November 2008 that plaintiff had "a headache disorder consistent with migraine," the ALJ correctly noted that there was no medical evidence that plaintiff was diagnosed with, or treated for, migraine headaches since his alleged disability onset date of February 14, 2009 (AR 24). The ALJ's position is supported by Social Security Ruling (SSR) 96-4p, which provides in pertinent part that "[a] 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment." [5] SSR 96-4p further provides that:

> An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

> regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

SSR 96-4p (footnote omitted). *See* 20 C.F.R. §§ 404.1529(b) and 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). But whether the migraines are a symptom or an impairment, although Dr. Koutainis observed that plaintiff had a headache disorder during an examination prior to his alleged disability onset date, there is no evidence that plaintiff had a medically determinable impairment of migraine headaches during the time he claims to have been disabled. Accordingly, this claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the impact of Dr. Ostien's opinion and the VE's testimony that plaintiff's "severely impaired capability" to interact with co-workers and supervisors was work preclusive.


Dated: June 18, 2015                         /     s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).